AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
Information Associated with Facebook User ID )
www.facebook.com/younghefner.bailey that is )
Stored at Premises Controlled by Facebook )

Case No.  1:18sw 6 4

F I L E D
JAN 3 1 2018
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the      Northern      District of      California      , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 21 U.S.C. §§ 841(a)(1), 846 | Conspiracy to distribute controlled substances |
| 18 U.S.C. § 922(g)(1) | Possession of a firearm by a convicted felon |

The application is based on these facts:
See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jonathan F. Earle, ATF Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

_____/s/_____
Michael S. Nachmanoff
United States Magistrate Judge
*Judge's signature*

Date:      01/31/2018

City and state:  Alexandria, Virginia

The Hon. Michael S. Nachmanoff, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with the Facebook user ID www.facebook.com/younghefner.bailey that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

I.   **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)   All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)   All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)   All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)     All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)     All "check ins" and other location information;

(g)     All IP logs, including all records of the IP addresses that logged into the account;

(h)     All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)     All information about the Facebook pages that the account is or was a "fan" of;

(j)     All past and present lists of friends created by the account;

(k)     All records of Facebook searches performed by the account;

(l)     All information about the user's access and use of Facebook Marketplace;

(m)     The types of service utilized by the user;

(n)     The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)     All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)     All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

## II.   Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) (felon in possession) and Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances), since February 1, 2017, including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a) Information, transactional logs or records where BAILEY discusses purchasing and/or possessing firearms;

(b) Any photographs of firearms, ammunition, firearms receipts, and documentation related to the purchase of firearms;

(c) Any videos of firearms;

(d) Information, transaction logs or records related to Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(g) The identity of the person(s) who communicated with the user ID about matters relating to the possession firearms and ammunition, including records that help reveal their whereabouts.

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division



| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK USER ID www.facebook.com/younghefner.bailey THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK | **Under Seal**<br><br>Case No. 1:18sw 64 |
| --- | --- |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Jonathan Earle, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for

information associated with the Facebook user ID www.facebook.com/younghefner.bailey

(the "SUBJECT ACCOUNT") that is stored at premises owned, maintained, controlled, or

operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo

Park, California.  The information to be searched is described in the following paragraphs and in

Attachment A.  This affidavit is made in support of an application for a search warrant under 18

U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the

government records and other information in its possession, pertaining to the subscriber or

customer associated with the user ID, as described in Attachment B.

2.      I have been a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and

Explosives ("ATF") for approximately eight years.  Since March 2013, I have been assigned to

the Washington Field Division's Firearms Trafficking Group and Falls Church Group II.  My

assignments include investigating individuals who are involved in the illegal possession and transfer of firearms, violent crimes involving firearms, and narcotics trafficking.

3.      This affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that were not personally made by me were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person.

4.      Based on my training and experience I know individuals use Facebook and other social media platforms to possess, distribute or purchase firearms and or controlled substances. Individuals use direct or private messages on Facebook to conceal from law enforcement photos, conversations or videos of them possessing or purchasing firearms or distributing controlled substances.

5.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g)1 (felon in possession of a firearm), Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute cocaine and other controlled substances), as described in Attachment B have been committed by TAVON BAILEY. There is also probable cause to search the SUBJECT ACCOUNT for information described in Attachment A for evidence of these crimes and items to be seized listed in Attachment B.

## Probable Cause

A. Background of Investigation

6.      In February 2017, a cooperating source ("CS-1") reported to the Prince William County Police Department that Tarvell Vandiver was a narcotics distributor.  CS-1 is a member of the Imperial Gangsta Blood ("IGB") gang.  CS-1 will be referred to in the masculine gender, regardless of CS-1's true gender.  CS-1 has been convicted of two felonies, including robbery and a probation violation.  He was arrested in December 2016, in Prince George's County, Maryland, for possessing a stolen firearm as a convicted felon and possession of controlled substances.  CS-1 originally cooperated because he hoped to receive a lesser sentence.  Based on CS-1's cooperation, Prince George's County dismissed his charges.  CS-1 continues to cooperate because he is being compensated.  CS-1 also hopes to be relocated.

7.      In March 2017, ATF and the Federal Bureau of Investigation ("FBI") began jointly investigating Blood gang members to include Vandiver and his associates involved in criminal activity in Northern Virginia.

8.      On January 9, 2017, a federal Grand Jury returned an Indictment against Tarvell Vandiver for Conspiracy to Distribute 280 Grams or More of Cocaine Base, Conspiracy to Distribute Five Kilograms or More of Cocaine, Conspiracy to Distribute 100 Grams or More of Heroin, Distribution of 28 Grams or More of Cocaine Base, Distribution of 280 Grams or More of Cocaine Base, Distribution of 40 Grams or More of Fentanyl and Use and Carry of a Firearm During and in Relation to a Drug Trafficking Crime.

B. BAILEY's Involvement in Drug Trafficking

9.      On July 18, 2017, CS-1, at the direction of law enforcement, socialized with BAILEY at an address located in Washington, DC.  While at the address, BAILEY asked CS-1

3

for $100 in order to purchase a quantity of cocaine from Vandiver.  CS-1 provided BAILEY

$100 in United States currency.

10.     On July 22, 2017, CS-1, at the direction of law enforcement, socialized with

BAILEY in the area Washington, DC.  While socializing with BAILEY, BAILEY told CS-1 that

he had used the $100 provided by CS-1 to purchase $100 worth of cocaine from Vandiver.

BAILEY further informed CS-1 that he made $900 profit from the cocaine and that he wanted to

increase his cocaine distribution due to the high profit margin.

11.     On July 25, 2017, CS-1, at the direction of law enforcement, was present with

BAILEY and Vandiver at the residence of a co-conspirator, located in Woodbridge, Virginia.

While at this residence, CS-1 and BAILEY were present while Vandiver cooked cocaine into

cocaine base, a Schedule II controlled substance.  Once Vandiver was finished cooking cocaine

base, CS-1 traveled with Vandiver and BAILEY to a gas station in Woodbridge, where Vandiver

distributed an amount of cocaine base to Brandon Edler.  Edler is currently charged via criminal

complaint in the Eastern District of Virginia with conspiring to distribute cocaine base.

12.     On August 8, 2017, CS-1, at law enforcement direction, was present with

BAILEY and Vandiver in the area of Woodbridge.  Vandiver drove CS-1 and BAILEY to an

address in Woodbridge, where Nasiru Carew provided Vandiver with a light blue plastic bag.

Carew is currently charged via criminal complaint in the Eastern District of Virginia with

conspiracy to distribute marijuana.  CS-1 stated that he believed that this bag contained an

amount of marijuana.  Vandiver then drove CS-1 and BAILEY to another address in

Woodbridge, where Vandiver exited the vehicle and met with Michael Lederer.  Lederer is

currently charged in the Eastern District of Virginia with being a prohibited person in possession

of firearms.  After meeting with Lederer, CS-1 observed Vandiver walk back to Vandiver's

vehicle while counting money. CS-1 further stated that Vandiver was no longer in possession of the light blue plastic bag. Vandiver, CS-1, and BAILEY then returned to the address associated with Carew in Woodbridge. While at the address, CS-1 stated that Vandiver exchanged approximately one pound of marijuana for another, better quality pound of marijuana with Nathaniel Bruce-Cobbold. Cobbold is currently charged via criminal complaint in the Eastern District of Virginia with conspiracy to distribute marijuana. CS-1 stated that Vandiver then transported BAILEY to his vehicle.

C. Surveillance of BAILEY and Vandiver

13.     On December 4, 2017, Vandiver contacted CS-1 and informed him of a mandatory IGB leadership meeting that was scheduled to be held on December 5, 2017, in Richmond, Virginia. CS-1 was further instructed to drive Vandiver and BAILEY to the meeting. CS-1 was told to be at Vandiver's residence in the morning hours of December 5, 2017.

14.     On December 5, 2017, law enforcement met with CS-1 and placed an audio recording/transmitting device on his person. CS-1 was followed to the area of Vandiver's residence on Bayside Avenue, Woodbridge, Virginia, where CS-1 picked up Vandiver and BAILEY. Vandiver and BAILEY exited Vandiver's apartment and met CS-1 in the parking lot. Both BAILEY and Vandiver entered CS-1's vehicle and they departed with law enforcement following the vehicle. Law enforcement followed CS-1's vehicle on Bayside Avenue and observed the vehicle turn around and return to the parking lot of Vandiver's residence.

15.     A 2009 Dodge Challenger, bearing Virginia registration XXX-7UL was parked near the front of the entrance to Vandiver's building. In the past, law enforcement have observed Vandiver operating this vehicle despite the fact that it is registered to a female. Law enforcement observed CS-1 park outside of Vandiver's residence in the area of Vandiver's

5

Dodge Challenger, remain for a few minutes, then drive away from the area in his vehicle, with BAILEY and Vandiver as passengers.

16.     Law enforcement listened in real-time (and later reviewed to corroborate) the conversation that took place within CS-1's vehicle. CS-1 was also relaying intelligence about the conversation to law enforcement. For instance, CS-1 informed law enforcement that BAILEY had placed a firearm in the glovebox of Vandiver's Dodge Challenger.

17.     When the group departed the apartment in CS-1's vehicle, Vandiver asked BAILEY if he brought his "joint" (based on my training and experience, I know "joint" is a common slang term for a firearm). BAILEY responded, "Yea." Vandiver asked BAILEY, "You wanna bring that shit bro, if you don't want to, you don't got to, for real." BAILEY responded, "That's good, I'll put it back." Vandiver told BAILEY, "That nigga BILLZ bringing a joint, I don't think you really need it." BILLZ is a known IGB gang member as well. Vandiver told BAILEY, "Throw it in my car real quick."

18.     CS-1 later informed law enforcement that he turned the vehicle around after initially departing Vandiver's residence and returned to the parking lot. According to CS-1, when BAILEY and Vandiver entered his vehicle, BAILEY had a black pistol in his waistband. CS-1 stated BAILEY and Vandiver had a conversation about the firearm and Vandiver instructed BAILEY to place the firearm in his (Vandiver's) vehicle. CS-1 stated BAILEY exited his vehicle and went to the driver's side of Vandiver's Dodge Challenger. CS-1 stated Vandiver provided BAILEY with the key to place the firearm in the glove box. CS-1 stated BAILEY placed the firearm in the glove box and then exited Vandiver's vehicle. When BAILEY returned to CS-1's vehicle, he realized he still had a magazine on him, so he returned to Vandiver's vehicle to place the magazine in the glovebox as well.

6

D.  Search Warrant on Vandiver's Dodge Challenger

19.     On December 4, 2017, the Honorable Theresa Carroll Buchanan, United States

Magistrate Judge for the Eastern District of Virginia, authorized a search warrant for Vandiver's

2009 Dodge Challenger bearing Virginia registration XXX-7UL.

20.     After learning BAILEY had placed his firearm in the glovebox of Vandiver's

vehicle, law enforcement located the vehicle, which remained parked outside of Vandiver's

residence on Bayside Avenue.  On December 5, 2017, at approximately 1:42 p.m., law

enforcement executed the search warrant and had the vehicle towed to a secured parking lot

maintained by the Prince William County Police Department.  Law enforcement commenced

searching the vehicle at approximately 2:38 p.m.  Inside the vehicle, law enforcement located

and seized suspected cocaine under the floor mat of the driver's seat.  Inside the glovebox of the

vehicle, law enforcement located and seized a Sig Sauer SP2340 .40 caliber pistol.  Based upon

my training and experience, I know this pistol to be a firearm as that term is defined in Title 18,

United States Code, Section 921(a)(3).  I also know that the Sig Sauer SP2340 .40 caliber pistol

is manufactured outside of the Commonwealth of Virginia; consequently, the firearm has

traveled in interstate commerce.

E.  BAILEY's Criminal History

21.     Law enforcement has reviewed BAILEY's criminal history.  BAILEY has been

convicted in the Commonwealth of Virginia of ten felony offenses, with each punishable by

imprisonment for a term exceeding one year.  On October 3, 2013, BAILEY was convicted of

Possession of a Firearm by a Felon in Alexandria, Virginia.  BAILEY is currently on probation

out of Alexandria, Virginia.

F.  Probable Cause to Search the Account

22.     Law enforcement identified the SUBJECT ACCOUNT as belonging to BAILEY because of photos he posts of himself, including the profile photo, which match law enforcement booking photos of BAILEY. I have also observed the user of the SUBJECT ACCOUNT promoting his own music, under the name "Black Gawd," which I know to be one of BAILEY's aliases.

23.     A review of publicly posted information on the SUBJECT ACCOUNT also revealed a video posted on December 5, 2017 with BAILEY interacting with Vandiver at the IGB gang meeting (reference paragraph 13).

24.     Based on this information, I believe there is probable cause to support that the SUBJECT ACCOUNT has evidence of BAILEY possessing firearms after being previously convicted of a felony offense in the state of Virginia and evidence of BAILEY in possession of controlled substances.

## FACEBOOK

25.     Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com.  Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

26.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state,

and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

27. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

28. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

29. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations

to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

30.     Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

31.     Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a Chat feature that allows users to send and receive instant messages through Facebook. These chat communications are stored in the chat history for the account. Facebook also has a Video Calling feature, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

32.     If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

33.     Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook users can also become "fans" of particular Facebook pages.

34.     Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

35.     Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present.  The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend.  The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

36.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

37.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

38.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

39.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform.  When a

11

Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

40.  Facebook uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications.

41.  Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

42.  Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts

12

between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

43.     As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's "Neoprint," IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's

13

state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

44.     Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

45.     On January 9, 2018, law enforcement served Instagram with a preservation request pursuant to 18 U.S.C. § 2703(f), requiring Facebook to preserve all information associated with the SUBJECT ACCOUNT.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

46.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

47.     Based on the forgoing, I request that the Court issue the proposed search warrant.

48.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711 and 18 U.S.C. §§ 2703(a), (b)(1)(A) &

14

(c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has

jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

49.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not

required for the service or execution of this warrant.

Respectfully submitted,


Jonathan F. Earle
Special Agent
Bureau of Alcohol, Tobacco, Firearms and
Explosives


Subscribed and sworn to before me on _____ 31 _____ 2018.

_____/s/_____
Michael S. Nachmanoff
_____United States Magistrate Judge_____
The Honorable Michael S. Nachmanoff
United States Magistrate Judge

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to information associated with the Facebook user ID

www.facebook.com/younghefner.bailey that is stored at premises owned, maintained, controlled,

or operated by Facebook Inc., a company headquartered in Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I.    **Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for the user ID listed in Attachment A:

(a)    All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b)    All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c)    All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them;

(d)    All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments;

gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e)    All other records of communications and messages made or received by the user, including all private messages, chat history, video calling history, and pending "Friend" requests;

(f)    All "check ins" and other location information;

(g)    All IP logs, including all records of the IP addresses that logged into the account;

(h)    All records of the account's usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i)    All information about the Facebook pages that the account is or was a "fan" of;

(j)    All past and present lists of friends created by the account;

(k)    All records of Facebook searches performed by the account;

(l)    All information about the user's access and use of Facebook Marketplace;

(m)    The types of service utilized by the user;

(n)    The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o)    All privacy settings and other account settings, including privacy settings for individual Facebook posts and activities, and all records showing which Facebook users have been blocked by the account;

(p)    All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

18

## II.     Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of Title 18, United States Code, Section 922(g)(1) (felon in possession) and Title 21, United States Code, Sections 841(a)(1) and 846 (conspiracy to distribute and possess with the intent to distribute marijuana and other controlled substances), since February 1, 2017, including, for the user ID identified on Attachment A, information pertaining to the following matters:

(a) Information, transactional logs or records where BAILEY discusses purchasing and/or possessing firearms;

(b) Any photographs of firearms, ammunition, firearms receipts, and documentation related to the purchase of firearms;

(c) Any videos of firearms;

(d) Information, transaction logs or records related to Evidence indicating how and when the Facebook account was accessed or used, to determine the chronological and geographic context of account access, use, and events relating to the crime under investigation and to the Facebook account owner;

(e) Evidence indicating the Facebook account owner's state of mind as it relates to the crime under investigation;

(f) The identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s); and

(g) The identity of the person(s) who communicated with the user ID about matters relating to the possession firearms and ammunition, including records that help reveal their whereabouts.